# IN THE COURT OF APPEALS OF IOWA

No. 23-1270
Filed September 27, 2023

**IN THE INTEREST OF D.W.,**
**Minor Child,**

**D.B., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District
Associate Judge.

The mother appeals the termination of her parental rights to one child.
**AFFIRMED.**

Nancy L. Pietz, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, attorney and guardian ad litem
for minor child.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**GREER, Presiding Judge.**

The juvenile court terminated the mother's parental rights to D.W., who was born in 2020, under Iowa Code section 232.116(1)(g) and (h) (2023).[1] The mother appeals, arguing the Iowa Department of Health and Human Services failed to make reasonable efforts to reunify her with the child, the statutory grounds for termination were not proved, the loss of her rights is not in the child's best interests, and the court should have declined to terminate her parental rights because of the closeness of the bond she shares with D.W. Alternatively, the mother asks for a six-month extension to work toward reunification. We affirm the decision of the juvenile court.

**I. Standard of Review.**

We review the termination of parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Employing de novo review means we review the facts as well as the law and adjudicate the parent's rights anew. *Id.* "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (citation omitted).

**II. Discussion.**

**A. Statutory Grounds & Reasonable Efforts.**

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(g) and (h). The department's requirement to make reasonable efforts is implicated in both of these statutory grounds. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (recognizing that grounds for termination that "contain the

---

[1] The rights of the named putative father and any other unknown fathers were also terminated. No father appeals.

dual elements of parental unfitness and the failure of the parent to become minimally fit to parent the child within a specific period of time in which our legislature has determined a child needs a permanent home . . . implicate[] the reasonable effort requirement"). And while "the reasonable efforts requirement is not viewed as a strict substantive requirement of termination," "the scope of the efforts by the [department] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *Id.* at 493. So we consider the mother's reasonable-efforts claim in conjunction with deciding her challenge to the statutory grounds.

Regarding reasonable efforts, the mother claims the department failed to comply with the juvenile court's November 3, 2022 permanency review order, which she asserts required the department to "formulat[e] a three month transition plan to return D.W. to his mother." But the written November 3 order does not include this requirement. The court may have verbally ordered the department to initiate a transition plan, but we do not have a transcript of that permanency review hearing. In January 2023, the mother filed a motion asking for D.W. to be returned to her custody and for the juvenile court to make a finding the department failed to make reasonable efforts. That motion was heard and decided in conjunction with another permanency review hearing that took place on January 31 and February 3. In the order that followed, the juvenile court ruled:

> The Court finds [the department] attempted to implement the court ordered transition plan to return [D.W.] to the mother's custody. The plan could not proceed due to the mother's behavior—including making inappropriate suicidal statements during a visit—and testing positive for methamphetamines and amphetamines.

Insofar as the mother is challenging the facts underlying the juvenile court's ruling, we are also without the transcript from the January 31 and February 3 permanency review hearing.

We cannot find facts anew without the necessary record to review, and it would be improvident to otherwise disturb the juvenile court's ruling on this issue. *See* Iowa R. App. P. 6.803(1) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to such finding or conclusion."); *see also In re F.W.S.*, 698 N.W.2d 134, 135–36 (Iowa 2005) ("Without the benefit of a full record of the lower courts' proceedings, it is improvident for us to exercise appellate review . . . . [The appellant's] failure to comply with rule [6.803(1)] precludes [her] from seeking relief on appeal." (internal citation omitted)). We do not consider the mother's reasonable-efforts claim further.

When the juvenile court terminates parental rights on more than one ground, we may affirm on any ground we find supported by the record evidence. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Here, we choose to review termination under paragraph (h), which allows the court to terminate when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). The mother challenges only the fourth element—whether D.W. could be returned to her custody at the time of the termination trial. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" as the time of the termination trial).

The mother has been involved with the department and juvenile court previously regarding another child, V.B., to whom the mother lost her parental rights in early 2018. During that case, the mother struggled with remaining in a relationship that involved domestic violence and her mental health, including suicidal thoughts. The mother also abused her prescription Adderall and used illegal marijuana. At the time of the December 2017 termination trial regarding V.B., these issues were unresolved.

The mother's current involvement with the department began in February 2022 after she overdosed by taking three to six times the prescribed amount of her medication and drinking alcohol while caring for her child. When police arrived at the mother's home, her significant other was present in violation of a no-contact order. Because the mother needed to go the hospital and the boyfriend was being arrested, the department was notified. D.W. was temporarily removed from the mother's custody, which was later confirmed.

Between the February 2022 removal and the May 2023 termination trial, D.W. remained outside of the mother's custody. From June on, the mother regularly engaged in individual mental-health therapy, but she also quit the program her therapist recommended to treat her diagnosis of borderline personality disorder, telling the therapist participating in the program made her look bad to the juvenile court. In the fall of 2022, the mother revoked her release to the

department, so the therapist was unable to share information or learn anything about the child-in-need-of-assistance (CINA) case besides what the mother reported. And at trial, it became clear the mother was not always forthright with her therapist; she did not tell him about her missed and positive drug tests or that the CINA case opened after she overdosed. And the mother continued to exhibit concerning behavior that seemed to stem from mental-health issues; in January 2023, the mother expressed suicidal ideation in front of D.W. at a supervised visit.

To her credit, the mother completed drug treatment during the pendency of the CINA case. But she also continued to struggle with substance abuse. She tested positive for both methamphetamine and marijuana in December 2022 and January 2023 and for both cocaine and marijuana in late April. These positive tests came both while the mother was involved in substance-abuse treatment and after she completed it, yet she did not re-engage in treatment, seek a greater level of treatment, or discuss the positive results or her reason for using with her mental-health therapist. The termination trial took place less than one month after the mother's drug test that was positive for cocaine.

While the mother had an appropriate home where D.W. could live, because of her unresolved issues with drugs and her mental health, we cannot say he could have been safely returned to her custody at the time of the termination trial. *See In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (concluding section 232.116(1)(h)(4) was met because the child could not be safely returned to the parent's custody at the time of the termination trial). The State proved the statutory ground for termination under section 232.116(1)(h).

**B. Best Interests.**

The mother argues termination of her rights is not in D.W.'s best interests. *See* Iowa Code § 232.116(2). She bases her argument on the idea that D.W. could be safely returned to her custody at the time of trial. But, as we have already found, D.W. could not yet have been returned to the mother's custody. And as we focus on the child's safety and their need for a permanent home when making a best-interests determination, *In re J.E.,* 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially), we conclude termination of the mother's rights is in D.W.'s best interests.

**C. Permissive Exception.**

The mother argues the court should have avoided termination because of the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(c). The mother maintains termination should be avoided because "[a]ll parties agree that this child shares a bond with his mother." But the existence of a bond is not enough to warrant the application of the permissive exception. *See D.W.*, 791 N.W.2d at 709. Rather, the mother has the burden to prove that the disadvantage D.W. will suffer as a result of termination of her rights overcomes her inability to parent him. *Id.* And she has not done so. Therefore, we do not apply a permissive exception.

**D. Six-Month Extension.**

Finally, the mother asks for six more months to work toward reunification. In support of her request, she points out that her therapist testified she could possibly reunify with D.W. if given more time. And, her therapist confirmed the mother made significant improvements with her mental health in the almost year

that they worked together in therapy, but she backslid on her recovery from substance abuse, which was something he learned from the mother's lawyer rather than the mother. We note the therapist had never seen the mother and D.W. together and, before arriving at trial, did not know about the mother's recent positive drug test for cocaine. Even more importantly, the question we must answer before granting an extension is not whether it is possible the parent could ever reunify with their child. Rather, the question is whether the need for removal will no longer exist at the end of the six months. *See* Iowa Code § 232.104(2)(b). While the mother made "significant improvements in her mental health"— according to the therapist—we cannot say that, after an additional six months, the mother's mental-health and substance-abuse issues will be alleviated to the point that D.W. will be safe in her full-time care. We decline to grant an extension here.

We affirm the termination of the mother's parental rights to D.W.

**AFFIRMED.**